Eric ANDERSEN, Mary Jo Andersen, Gary Weyers, Robert Leverenz, Jr., Otis Rice, Ferill Rice, Carl Giordana, A. J. Dragosh, Paul Feldkamp, and Brett Kindness, Plaintiffs-Respondents,

v.

VILLAGE OF LITTLE CHUTE, a Wisconsin municipal corporation, Defendant-Appellant.

Court of Appeals.

*No. 95–1677. Submitted on briefs January 16, 1996.—Decided April 2, 1996.*

(Also reported in 549 N.W.2d 737.)

On behalf of defendant-appellant, the cause was submitted on the briefs of *Charles D. Koehler* of *Herrling, Clark, Hartzheim & Siddall Ltd.* of Appleton.

On behalf of plaintiffs-respondents, the cause was submitted on the brief of *Mark B. Hazelbaker* and *Amelia McCarthy* of *Axley Brynelson* of Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. The Village of Little Chute appeals a judgment on a verdict and an order denying post-verdict motions. The circuit court upheld the jury's damage awards, one for diminished value of the plaintiffs-landowners' property as just compensation for the Village's temporary taking, and another based upon the Village's maintenance of a continuing private nuisance imposing serious personal discomfort from odors, noise, pollution and safety concerns. This lawsuit arose out of the Village's diversion of a large volume of storm water over a period of years through the bottom of a ravine running through the plaintiffs' residential properties.

The Village seeks a discretionary reversal pursuant to § 752.35, STATS.[1] It alleges that the trial court erred by: (1) denying the Village's motion to adjourn the trial either to compel plaintiffs to comply with the inverse condemnation procedures of § 32.10, STATS., 1993-94, or to permit the Village to pursue direct condemnation; (2) upholding an award of duplicated damages; (3) failing to find that any taking was permanent; (4) failing to require a finding of the initial date of taking; (5) failing to find the waterflow was a navigable stream; (6) upholding a damage verdict that is contrary to the great weight of the evidence; and (7) failing to apply a six-year statute of limitations.

We conclude: (1) § 32.10, STATS., is not applicable, and the trial court acted within its discretionary powers when it declined to adjourn the jury trial based upon the Village's motion filed just weeks before the scheduled jury trial, to allow the Village to seek permanent taking through direct condemnation; (2) the damages were not duplicated; (3) the Village waived the right to claim a permanent taking; (4) the absence of a finding of the initial date of taking of plaintiffs' property does not compel a new trial in the

---

[1] Section 752.35, STATS., provides:

Discretionary reversal. In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

interest of justice; (5) the Village failed to prove the bottom of the ravine was a navigable stream owned by the public; (6) the damage award is not contrary to the evidence; and (7) the six-year statute of limitations is inapplicable to a continuing nuisance. We therefore affirm the judgment and the order.

The subject property is in a subdivision in the Village of Little Chute known as Pheasant Run Estates. Prior to development, in approximately 1974, the Village designed a storm water drainage system terminating at then vacant land. In the 1970s the property included a small drainage ditch at the base of a ravine common to the entire area. Witnesses indicated that they could "walk through and not get our feet wet," and that the maximum water flow in rainy periods was an inch or two deep and a couple of feet wide.

Commencing in the mid to late 1980s, due to rapid growth of the Village, the system grew, and eventually it drained eight miles of storm water through the ravine. The increase transformed an intermittent flow of very shallow water to a raging river often fifteen to thirty-five feet wide and several feet deep, featuring stagnant pools as deep as six or eight feet. The volume and velocity of the flow felled many mature hardwood trees that formerly grew along the edge of the ditch. According to witnesses, the dramatic growth of the storm water caused significant soil erosion, added pollutants, refuse and odors to the area, sometimes generated loud noise and safety hazards and generally interfered with the owners' enjoyment of the ravine as a recreation area. The plaintiffs presented expert testimony to establish the diminished value of their property as of a date shortly before trial.

The plaintiffs filed their lawsuit in May 1993, seeking to enjoin the Village from diverting the storm water over their land, claiming the activity constituted a nuisance. The plaintiffs' amended complaint added a claim for money damages for the Village's "physical invasion" that "deprived Plaintiffs of all beneficial use of a substantial portion of their land, in violation of the Fifth Amendment of the United States Constitution and Article I, Section 13 of the Wisconsin Constitution."

Just weeks before trial in early 1995, the Village moved to adjourn "to a date subsequent to the completion of a condemnation that is presently being requested by the Village . . . ." The Village board of trustees adopted a Relocation Order pursuant to § 32.05(1), STATS., on January 19, 1995, a step preliminary to a jurisdictional offer and a formal taking of a permanent easement across plaintiffs' property.

We reject the Village's first contention: that the court erred by denying an adjournment of the jury trial to compel plaintiffs to adhere to § 32.10, STATS. (Condemnation proceedings instituted by the property owner). Section 32.10 does not govern inverse condemnation proceedings seeking just compensation for a temporary taking of land for public use.[2] *Zinn v. State*, 112 Wis. 2d 417, 334 N.W.2d 67 (1983). *Zinn* involved an allegation of temporary taking, and that court held:

---

[2] Article I, § 13, of the Wisconsin Constitution provides: "The property of no person shall be taken for public use without just compensation."

> In this case the procedure proscribed under sec. 32.10, STATS., does not apply to the type of "taking" that is presented by the facts alleged in the plaintiff's complaint. But because the complaint alleges a constitutional "taking," the plaintiff has stated a claim based directly on Art. I, sec. 13 of the constitution and no statutory remedy is necessary in order to enforce this right. We therefore remand the action to the trial court.

*Id.* at 438, 334 N.W.2d at 77.

The plaintiff in *Zinn* alleged that the DNR had initially declared 200 acres of the plaintiff's land was within the ordinary high water mark of a navigable lake, thereby depriving her of her riparian rights enjoyed prior to that ruling. *Id.* at 421, 334 N.W.2d at 69. Plaintiff had petitioned for a rehearing, and two years later the DNR rescinded its initial ruling and restored plaintiff to her riparian rights in the disputed land. *Id.* Our supreme court upheld the plaintiff's right to pursue inverse condemnation for compensatory damages and litigation expenses based upon a temporary taking covered by art. I, § 13, of the Wisconsin Constitution rather than under § 32.10, STATS. *Zinn*, 112 Wis. 2d at 438, 334 N.W.2d at 77.

To trigger art. I, § 13, there must be a "taking" of private property for public use. *Zinn*, 112 Wis. 2d at 424, 334 N.W.2d at 70. A "taking" occurs in the constitutional sense when the government restriction placed on the property "practically or substantially renders the property useless for all reasonable purposes." *Id.* While the typical taking occurs when the government acts to condemn property in the exercise of its power of eminent domain, the entire doctrine of inverse condemnation is predicated on the proposition

that a taking may occur without such formal proceedings. *First English Evan. Luth. Church v. County of Los Angeles*, 482 U.S. 304, 316 (1987) (citing the Court's previous construction of art. I, § 13, of the Wisconsin Constitution "identical to the Just Compensation Clause" of the United States Constitution).

The Village also contends, however, that the trial court's finding of a temporary taking "is not appropriate when the defendant clearly intends to take the property permanently." The Village waived any right to now claim a permanent taking because it never asserted it. The Village's answer expressly denied the plaintiffs' allegations of a taking made in the amended complaint. The Village's affirmative defenses also asserted that the water course was a naturally occurring navigable stream subject to all the rights of the public, and that the diversion of surface water was not illegal and created no liability. The Village took the position at each stage of the trial court proceedings that there was no taking, never asserting a permanent taking.

Immediately before trial, when debating the Village's motion to adjourn the trial to pursue direct condemnation, plaintiffs reasserted that they sought damages for a temporary taking and continued to seek injunctive relief. When the trial court made a tentative finding that temporary occupation or taking had occurred, the Village made no assertion that it should find the taking permanent. During the jury instructions conference at the close of evidence, the taking question arose again. The plaintiffs proposed to instruct the jury that the plaintiffs alleged a temporary taking until such time as the Village ceases to occupy the property. The court decided to advise the jury that

the plaintiffs were "seek[ing] a determination that their property has been taken . . . until the present time," thus limiting the damages to the date of trial. The Village's only challenge was on grounds that an award for taking as well as for a nuisance constituted double damages.

■

Finally, the plaintiffs also moved for a directed verdict finding that a temporary taking had occurred. The Village did not oppose the motion, suggesting that the court could either answer the first verdict question "yes" or eliminate the question altogether. The Village merely expressed the view that the court had already made a determination as a matter of law that a taking had occurred. Under these circumstances, the Village waived any right to a post-verdict finding that the taking was permanent.

■

Next, the Village contends that the court erred when it refused to adjourn the trial to allow the Village to pursue direct condemnation proceedings. We disagree. Whether to grant an adjournment is generally discretionary with the trial court. *Hales Corners S&L Ass'n v. Kohlmetz*, 36 Wis. 2d 627, 634, 154 N.W.2d 329, 333 (1967). The Village took its first tentative step toward initiating direct condemnation in late January 1995 when the board adopted a relocation order pursuant to § 32.05, STATS., entitled "Condemnation for sewers and transportation facilities." In January, the Village moved the court to continue the February 14, 1995, trial date.

*Maxey v. Redevelopment Auth.*, 94 Wis. 2d 375, 288 N.W.2d 794 (1980), held that the government's commencement of a direct condemnation action does not bar the prosecution of a landowner's pending

inverse condemnation action. Although *Maxey* dealt with an action for compensation for a permanent taking covered by § 32.10, STATS., we conclude that the underlying reason for permitting the plaintiff-landowner to proceed when the government does not extends to the circumstances here. The *Maxey* court observed: "That statute [§ 32.10] is designed to protect property owners against the slothful actions of a condemnor which, having constructively taken an owner's property, is in no hurry to compensate the owner . . . ." *Id.* at 393, 288 N.W.2d at 803. In addition, the court stated:

> [T]o allow the mere making of a jurisdictional offer [preliminary to the formal commencement of a condemnation proceeding by petition] to constitute the exercise of condemnation powers would deprive a property owner of any remedy and would leave the property owner completely helpless, irrespective of how long after the jurisdictional offer the condemnor finally decided to condemn or to abandon the project.

*Id.* at 394, 288 N.W.2d at 803.

The plaintiffs in our case commenced their action in 1993, after negotiations with the Village failed. The Village sought direct condemnation only at the eleventh hour. While the Village points to the potential for future litigation where the only finding here is a temporary taking, that factor is not dispositive. In light of the fact that the plaintiffs were entitled to prompt resolution of their claim for relief, the trial court was within its discretionary authority to deny the Village's motion.

The Village also challenges the award of damages on several grounds: plaintiffs' failure to establish the initial date of taking; the use of a diminished value standard rather than loss of use as compensation for taking; allowing a double recovery; and awarding amounts contrary to the great weight of the evidence. We reject each challenge. A damage award will be sustained if it is within reasonable limits and is supported by credible evidence in the record. *Chernetski v. American Family Mut. Ins. Co.*, 183 Wis. 2d 68, 80-81, 515 N.W.2d 283, 289 (Ct. App. 1994).

The initial challenge is to the failure to establish an initial date of taking, that is, the date when the property was essentially rendered useless. Instead, the plaintiffs' experts used a date shortly before the trial date to determine the diminished value of the property. In order to grant a new trial in the interest of justice, an appellate court must be convinced, when reviewing the record as a whole, that there has been a miscarriage of justice or that the real controversy has not been fully tried. *Brookhouse v. State Farm Mut. Auto Ins. Co.*, 130 Wis. 2d 166, 171, 387 N.W.2d 82, 84-85 (Ct. App. 1986). To reverse on miscarriage of justice grounds, we are required to find a substantial probability of a different result on retrial. *Id.* at 172, 387 N.W.2d at 85. A retrial in this case would not likely change the result.

Certainly in the case of a permanent taking, the initial date of taking is essential to a proper determination of damages. The taker owns the land from that day forward, and any loss of value by the former owner is fixed on that date. We need not decide

whether a plaintiff claiming temporary taking is in a similar position. The Village's maintenance of a continuing nuisance entitled plaintiffs to prove that the value of their land they sought to recover continued to diminish up to the date of trial.[3] The gravamen of the tort is an ongoing harm. Because diminished value of the real estate is compensable as part of such a claim, there is no reason to deny the injured party the right to prove that loss up to the time of trial.

Nuisance damages are delineated in RESTATEMENT (SECOND) OF TORTS § 929 (1979) as follows:

Harm to Land from Past Invasions.

(1) If one is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction of value, the damages include compensation for

(a) the difference between the value of the land before the harm and the value after the harm, or at his election in an appropriate case, the cost of restoration that has been or may be reasonably incurred,

(b) the loss of use of the land, and

(c) discomfort and annoyance to him as an occupant.

The comment on subsec. (1), cl. (a), provides in part:

a. One whose land has been damaged is entitled to compensation for the difference between its value before and after the harm. If only a portion of a tract

---

[3] A private nuisance is an unreasonable interference with the interest of an individual in the use and enjoyment of land. The activity complained of must be offensive to a person of ordinary and normal sensibilities. *Bubolz v. Dane County*, 159 Wis. 2d 284, 298, 464 N.W.2d 67, 73 (Ct. App. 1990).

481

of land has been directly harmed, the diminished value of the entire tract is considered. On what is meant by value, see § 911.

The comment on subsec. (1), cl. (b), provides in part:

d. In addition to damages for the diminution of the value or other similar elements of damage, the plaintiff is entitled to recover for the past or prospective loss of use caused by the defendant's wrong as far as this has not been included in the other elements of damages awarded to the plaintiff, as stated in § 931. Thus, if the plaintiff's land has been flooded for a month so that he was unable to use the land, he is entitled to recover for this loss although there was no permanent harm to the land caused by the flood.

The comment on subsec. (1), cl. (c), provides in part:

e. *Discomfort and other bodily and mental harms.* Discomfort and annoyance to an occupant of the land and to the members of the household are distinct grounds of compensation for which in ordinary cases the person in possession is allowed to recover in addition to the harm to his proprietary interests.

*See also City of Phoenix v. Johnson,* 75 P.2d 30 (Ariz. 1938).

The plaintiffs did not seek damages for lost rental value as required in subsec. (1)(b) above, and that is not an issue in this case. What they received was compensation for diminished value and damages for discomfort and annoyance, recognized under subsecs. (1)(a) and (c) above. While the plaintiffs were entitled

to all those damages by virtue of a continuing private nuisance and their inverse condemnation action for a temporary taking was redundant, the fact that they recovered part of their damages through the taking claim and failed to prove the initial taking date was, at most, harmless error.

Contrary to the Village's next contention, the separate inquiries into diminished value and personal inconvenience did not produce double damages. An examination of the jury instructions and verdict support our conclusion.

The first damage question, question 2 in the verdict, read:

> As to each property owner listed below, what sum of money will compensate them for the fair market value of the property rights taken as a result of the occupation of their property by the Village of Little Chute?

There followed a separate inquiry for each of eight property owners.

The damage question, question 4 in the verdict, read:

> What amount of money do you find will fairly and reasonably compensate the plaintiffs for damages sustained as a result of the creation of a nuisance by the Village of Little Chute? Identify the amount of such damages sustained by each property owner on the blank line by their name(s).

There followed a separate inquiry for each of six property owners, the court having excluded from the inquiry two of the owners who had failed to show up for trial.

The relevant instructions as to damages in question 2 above provided:

> Now, Question 2 of the damage question speaks in terms of fair market value taken. By fair market value is meant the amount for which a property could be sold in the market on sale by an owner willing, but not compelled, to sell, and to a purchaser willing and able, but not obliged to buy.
>
> In this case, of course, you are not determining fair market value as such, but rather the diminishment in fair market value to the respective Plaintiffs' property assertedly caused by the routing of storm sewer water across the properties. There has been received into evidence testimony as to other sales as an aid to the jury, if such it be, in determining the fair market value of the properties under consideration.

In addition to a cautionary instruction not to duplicate the damage awards in the earlier inquiry, the court instructed the jury to resolve the nuisance damages as follows:

> If called upon to answer that question, then you're asked to attach a value to the use or enjoyment of which the respective Plaintiffs have been deprived with respect to their property. This includes the value of any personal discomfort, or inconvenience which the Plaintiffs have suffered with respect to the use and enjoyment of their property.

As the instructions and verdict demonstrate, the jury was allowed to award damages for diminished value of the property as part of the taking claim, and for personal inconvenience and discomfort as part of the nuisance claim. Because a landowner who suffers a

private nuisance is entitled to compensation for both those losses, the structure of the verdict in this case did not result in an award of duplicated damages.[4]

The Village contends that the court's instructions applied an erroneous standard for damages for a temporary taking, and that the proper measure is the loss in rental that probably could have been obtained, citing *W.H. Pugh Coal Co. v. State*, 157 Wis. 2d 620, 460 N.W.2d 787 (Ct. App. 1990). *Pugh* does say that lost rental value and not loss of fair market value is the proper measure of damages for a temporary taking. *Id.* at 631, 460 N.W.2d at 791. However, as we have already demonstrated, because the plaintiffs were entitled to diminished market value caused by a private nuisance, the error was harmless.[5]

---

[4] The verdict awarded damages to individual plaintiffs in question 2 (for diminished value) ranging from $8,306 to $21,028, totaling $94,408, and awarded damages to individual plaintiffs in question 4 (for inconvenience and discomfort) of $25,000 each, except for one award of $8,000, totaling $133,000. The total award to the eight named landowners in this case was therefore $227,408.

[5] Although our harmless error analysis also renders the matter moot, the Village misconstrues the holding in *Hillcrest Golf & Country Club v. City of Altoona*, 135 Wis. 2d 431, 400 N.W.2d 493 (Ct. App. 1986). *Hillcrest* does not hold that a landowner may maintain only one or the other; to the contrary, it provides the opposite. It is true that the initial paragraph in that decision states our conclusion that the plaintiff's complaint "is sufficient to state a cause of action in inverse condemnation or private nuisance." A reading of the entire opinion immediately reveals that the holding of the case is that the complaint stated a claim for both claims.

The Village's next argument, that the damages are contrary to the evidence because the appraised value of the plaintiffs' properties increased each year, ignores the evidence that the increased value was less than it would have been but for the nuisance.[6]

The Village contends that the trial court failed to apply the statute of limitations, either § 893.52, STATS., or § 893.93(1)(a), STATS., to limit plaintiffs' recovery to six years prior to the date their action was commenced, May 24, 1993.

Section 893.93(1)(a), STATS., provides:

> Miscellaneous actions. (1) The following actions shall be commenced within 6 years after the cause of action accrues or be barred:
>
> (a) An action upon a liability created by statute when a different limitation is not prescribed by law.

Section 893.52, STATS., provides:

> Action for damages for injury to property. An action, not arising on contract, to recover damages for an injury to real or personal property shall be commenced within 6 years after the cause of action accrues or be barred, except in the case where a different period is expressly prescribed.

Section 893.93(1)(a), STATS., by its terms, applies to an "action upon a liability created by statute . . . ." The Village's liability is not created by statute, but by the common law. If the Village means to imply that

---

[6] If the Village pursues its direct condemnation claim to permanently take the property, the amount of plaintiffs' damages will no doubt be reduced by the fact of the prior reduction in value.

486

liability arises from § 32.10, STATS., our prior discussion repudiates that argument.

The Village relies upon § 893.52, STATS., citing a statement in *Pugh*, 157 Wis. 2d at 629, 460 N.W.2d at 790: "For the statute of limitations to begin to run [§ 893.52], a claim must be definitely fixed and not continuing." The Village maintains that "[t]he cause of action accrued when the plaintiffs were first informed that there was a ravine in their backyard . . . ." The Village's contention that the presence of the ravine fixed the date of injury more than six years prior to the commencement of the action is without merit. The undisputed evidence establishes that the injury in this case was the Village's continuous diversion of storm waters beginning in the mid to late 1980s and 1990s.[7]

An action for a continuing injury may be maintained beyond the ordinary statute of limitations. In *Ramsdale v. Foote*, 55 Wis. 557, 13 N.W. 557 (1882), the plaintiff sought recovery for flood damage caused by the defendant's dam. That early case held: "It is well settled that every continuance of a nuisance is, in law, a new nuisance. . . . This being so, it is evident that the statute of limitations is not available to the defendants." *Id.* at 562, 13 N.W. at 562 (citations omitted).

*Speth v. City of Madison*, 248 Wis. 492, 499, 22 N.W.2d 501, 504 (1946) holds: "There is no statute which bars an action for a continuing injury to property." *Stockstad v. Town of Rutland*, 8 Wis. 2d 528, 530-31, 99 N.W.2d 813, 815 (1959), held that a

---

[7] The evidence reveals that one of the plaintiffs purchased his property fewer than six years prior to commencement of the action and was therefore within the six-year statute in any case.

landowner's complaint stated a claim for a private continuing nuisance where the town's road improvement in 1946 caused contamination and periodic flooding "from the dates of 1946 to the present," causing the plaintiff to become ill in the years 1954 and 1955. The holding of these cases is applicable to the present action for a private continuing nuisance.

Finally, the Village does not adequately develop its argument regarding navigability, concluding: "After reviewing all the evidence, this Court should find that the ravine is navigable in fact. Such finding directly [a]ffects the amount of the plaintiffs' nuisance damage award." This statement raises a number of problems the Village does not address. Initially, this court is not empowered to make findings of fact. *Wurtz v. Fleischman*, 97 Wis. 2d 100, 107 n.3, 293 N.W.2d 155, 159 n.3 (1980). If the Village is implying that the trial court erred by not finding as a matter of law that the evidence established that the original waterway was navigable in fact, it neither demonstrates that it sought such a ruling nor does our examination of the evidence uncover evidence to support such a ruling. The burden of proving that waters are navigable in fact is on the government. *State v. Bleck*, 114 Wis. 2d 454, 459, 338 N.W.2d 492, 495 (1983).[8] The only testimony

---

[8] The supreme court established the modern test of "navigability in fact" in *Muench v. PSC*, 261 Wis. 492, 53 N.W.2d 514 (1952):

> [I]t is no longer necessary in determining navigability of streams to establish a past history of floating of logs, or other use of commercial transportation, because any stream is *"navigable-in-fact"* which is capable of floating any boat, skiff or canoe, of the shallowest draft used for recreational purposes.

*Id.* at 506, 53 N.W.2d at 519.

that would bear upon the question whether the drainage ditch was a natural navigable waterway prior to the increased diversion of storm water demonstrates to the contrary.

If the Village is implying that its diversion of storm water created a navigable stream whereby the public obtained rights in the property that defeat the plaintiffs' claim for damages, it does not provide authority to support that suggestion. *Menomonee Falls v. DNR*, 140 Wis. 2d 579, 593, 412 N.W.2d 505, 511 (Ct. App. 1987), suggests the contrary:

> [U]nder a strict navigability in fact test, for which seasonal periods of high water suffice, low-lying, periodically flooded backyards, streets and street gutters, drainage ditches and the like could be considered navigable and thus subject to state regulation. This concern may be allayed by reference to the legislative declaration of navigability. Section 30.10(1) and (2), STATS., declares navigable only *lakes, streams, sloughs, bayous,* and *marsh outlets* which are navigable in fact. Lilly creek is undisputedly a stream. We are confident that there need be no fear that flooded backyards and street gutters will be declared navigable waters. (Emphasis in original.)

We decline to address the hypothetical question whether an increase of storm water into a navigable

---

Navigability . . . is not to be determined by the "normal" condition of the stream. . . .

. . . [T]he test is whether the stream has periods of navigable capacity which ordinarily recur from year to year, e.g., spring freshets, or has continued navigable long enough to make it useful as a highway for recreation or commerce.

*DeGayner & Co. v. DNR*, 70 Wis. 2d 936, 946, 236 N.W.2d 217, 222 (1975).

489

stream "directly affects the amount of plaintiffs' nuisance damage award." The evidence failed to establish the existence, prior to the increased storm water at issue, of a navigable stream.

In conclusion, the plaintiffs were entitled to pursue a claim for diminished value of property without regard to § 32.10, STATS., and despite the Village's subsequent step toward a direct condemnation. The Village has waived the right to contend that its taking was permanent. Any error in allowing diminished value damages without establishing the initial date of taking is not grounds for a discretionary reversal, and the nuisance damages for personal inconvenience did not constitute duplication of damages. The verdict was not contrary to the evidence. The six-year statute of limitations does not act as a bar to a continuing private nuisance action against the Village.

*By the Court.*—Judgment and order affirmed.