Donald J. KURYLO and Bernadine Kurylo, Plaintiffs-
Appellants,

v.

WISCONSIN ELECTRIC POWER COMPANY, Defendant-
Respondent.

Court of Appeals

*No. 99–1342. Submitted on briefs February 24,
2000.—Decided April 19, 2000.*

2000 WI App 102

(Also reported in 612 N.W.2d 380.)

On behalf of the plaintiffs-appellants, the cause was submitted on the brief of *Gary W. Thompson* of *Thompson Law Offices, S.C.* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Thomas B. Hartley* of *Guttormsen, Hartley & Guttormsen* of Kenosha.

Before Brown, P.J., Anderson and Snyder, JJ.

¶ 1.   BROWN, P.J.   Here, we conclude that WIS. STAT. § 32.06(2a) (1997–98),[1] which prescribes the procedures that must be followed before a condemnor may take property via eminent domain, does not require that the condemnor file the required certificate of compensation at the same time it records the conveyance. We thus affirm the trial court's determination that the condemnor did not violate the statute when it filed the certificates months after recording the corresponding conveyances. Additionally, we reject the contention that the condemnor failed to negotiate in good faith. We affirm.

¶ 2.   The facts are not in dispute. Wisconsin Electric Power Company (WepCo) identified a route for a high-voltage power line affecting sixty-four property owners in Kenosha county. WepCo began negotiating with the property owners to acquire the required easements.[2] On April 7, 1997, WepCo notified the Kurylos that it desired to acquire an easement over their property. On November 6, 1997, WepCo made its first jurisdictional offer of $17,800 to the Kurylos. WepCo extended a "final" offer of $19,580 to the Kurylos on January 22, 1998. WepCo made yet another offer on May 4, 1998, in the amount of $17,800. In the meantime, WepCo had settled with several of the Kurylos' neighbors.

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

[2] Such negotiations are a prerequisite to the condemnor making a jurisdictional offer to the property owners. The offer, in turn, is necessary to confer jurisdiction on the county condemnation commissioners to hear a petition from the condemnor for a determination of just compensation. *See* WIS. STAT. § 32.06(3); *Arrowhead Farms, Inc. v. Dodge County*, 21 Wis. 2d 647, 652, 124 N.W.2d 631 (1963).

¶ 3.    The Kurylos initiated this lawsuit on June 9, 1998, challenging WepCo's right to take. The Kurylos alleged that they had not received adequate notice of the Public Service Commission hearings. *See* WIS. STAT. § 196.491(3)(b) (requiring notice of public hearings on applications for a certificate of public convenience and necessity, a prerequisite to construction of an electric transmission line). On July 6, 1998, WepCo initiated condemnation proceedings against the Kurylos. The trial court assigned the case to the condemnation commission for a determination of just compensation. It was not until October 1, 1998, that WepCo recorded certificates of compensation, which disclose the compensation paid for acquired property, for all the property it had acquired for the power line project. On October 7, 1998, the Kurylos amended their complaint to allege that WepCo had failed to follow WIS. STAT. § 32.06(2a) by not recording the certificates of compensation (hereinafter CCs) at the same time it recorded the conveyances. The Kurylos alleged that WepCo's delay in recording the CCs for neighboring properties "deprived the [Kurylos] of the opportunity to be timely informed of the compensation paid to other property owners along the power line right of way, thus putting the [Kurylos] at a bargaining disadvantage vis-à-vis [WepCo]." The Kurylos further argued that WepCo failed to negotiate in good faith and did not make a bona fide effort to purchase the property because, in their view, it did not offer the Kurylos fair market value. Upon competing motions for summary judgment, the trial court granted summary judgment to WepCo and dismissed the Kurylos' complaint. The Kurylos appeal.

¶ 4. Our standard of review on summary judgment is de novo. *See Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). In this case, the decision on summary judgment hinges on the interpretation of a statute, which is also a question of law. *See Grosse v. Protective Life Ins. Co.*, 182 Wis. 2d 97, 105, 513 N.W.2d 592 (1994).

¶ 5. Before relating the parties' arguments, we set forth the relevant portion of the statute at issue. WISCONSIN STAT. § 32.06(2a) details the procedures a condemnor must follow prior to making a jurisdictional offer to a property owner. Among other things, the statute requires the condemnor to provide the owners of the property with information about the property and the project, including the names of at least ten neighboring landowners to whom offers are being made. *See id.* It goes on to prescribe the condemnor's duties regarding the recording of conveyances.

> The condemnor shall record any conveyance . . . executed as a result of negotiations under this subsection with the register of deeds of the county in which the property is located. The condemnor shall also record a certificate of compensation stating the identity of all persons having an interest of record in the property immediately prior to its conveyance, the legal description of the property, the nature of the interest acquired and the compensation for such acquisition.

*Id.*

¶ 6. The Kurylos argue that the statute is ambiguous in that it does not state the temporal relationship between the recording of the conveyance and the filing of the CC. According to them, a reasonable interpreta-

170

tion of the above language is that the condemnor must file the CC at the same time that the conveyance is recorded. In support of this argument, they resort to a Legislative Council Memorandum stating that the passage "requires the condemning authority to file with the deed of sale . . . a certificate stating the compensation paid for the property." In light of the statute's silence as to the timing of the filing, WepCo points to language later on in the same statute in support of its argument that the filing of the CC and the recording of the conveyance need not be contemporaneous. That portion of the statute states: "Any person named in the certificate may, within 6 months after the date of its recording, appeal from the amount of compensation therein stated by filing a petition with the judge of the circuit court . . . . The date the conveyance is recorded shall be treated as the date of the taking and the date of evaluation." *Id.* WepCo urges that if the filing of the CC and the recording of the conveyance had to be done on the same day, the statute would simply refer to one date. Instead, it refers to the date of the recording of the CC as the beginning of the six months in which to appeal. It then goes on to name the date of recording the conveyance as the date of taking. Were the two dates necessarily the same, WepCo argues, the statute would simply refer to the date of recording.

¶ 7.  Because the statute is silent regarding the time for filing the CC, it could reasonably be read to mean the CC and conveyance must be filed simultaneously or that they may be filed at different times. That reasonable minds could differ on the statute's meaning renders it ambiguous. *See Hauboldt v. Union Carbide Corp.*, 160 Wis. 2d 662, 684, 467 N.W.2d 508 (1991). In interpreting an ambiguous statute, our goal is to effect

the legislature's intent. *See Voss v. City of Middleton*, 162 Wis. 2d 737, 749, 470 N.W.2d 625 (1991). Because the statute is ambiguous, we look to the scope, history, context, subject matter and purpose of the statute to ascertain the legislative intent. *See Beard v. Lee Enters., Inc.*, 225 Wis. 2d 1, 10, 591 N.W.2d 156 (1999).

¶ 8.   Under WIS. STAT. ch. 32, the condemnor must attempt to negotiate with the property owner before petitioning for a determination of just compensation. *See* WIS. STAT. § 32.06(2a), (3). In 1977, our legislature added several additional steps that must be taken during the negotiation process. *See* Laws of 1977, chs. 438, 440. Several of the requirements are meant to provide information to the owner. For example, the condemnor must provide the owner with pamphlets describing the eminent domain process. *See* WIS. STAT. §§ 32.06(2a), 32.26(6). The owner must be provided with the names of neighboring landowners to whom offers are being made. *See* § 32.06(2a). Upon request, the owner has the right to examine the condemnor's maps showing property affected by the project. *See id.* One benefit of these requirements is that the owner comes to the negotiating table armed with more information.

¶ 9.   The legislature stopped short, however, of requiring the condemnor to make its offers public. According to the drafting record for Laws of 1977, ch. 438, which created the map and list requirements of WIS. STAT. §§ 32.05(2a) and 32.06(2a), an early version of the bill required the condemnor to provide owners with examples of offers being made to neighboring property owners. *See* drafting record for Laws of 1977, ch. 438, 1977 A.B. 969, LRB 7801/1 at 4, 7; Wisconsin Legislative Council Staff Memorandum 1 (Jan. 31, 1978) (included therein). That requirement was removed by an amendment to the bill. *See* drafting

record for Laws of 1977, ch. 438, 1977 A.B. 969, sub. amend. 1; Wisconsin Legislative Council Staff Memorandum 1 (Jan. 31, 1978) (included therein). It thus appears that the legislature made a conscious decision not to require the condemnor to make offers to neighboring landowners available to the owner.

¶ 10. What the legislature did require was that accepted offers resulting in conveyances be recorded. When negotiations are successful, the condemnor must file two documents. One is a record of the conveyance itself. The other is the CC, which states "the identity of all persons having an interest of record in the property immediately prior to its conveyance, the legal description of the property, the nature of the interest acquired and the compensation for such acquisition." WIS. STAT. § 32.06(2a). The filing of the CC triggers the start of the six-month period in which a person with an interest in the property may appeal from the amount of compensation.

¶ 11. The Kurylos would have us believe that the purpose of the CC is to inform landowners as to how much their neighbors are getting for land acquired by the condemnor. The CC, according to the Kurylos, provides the owner with one more piece of information to use in the negotiating process. Like the list and the map, it is meant to help inform the landowner about the project. That is why, the Kurylos argue, it must be filed at the same time as the conveyance. If there is a delay in the filing of the CC, as there was here, owners are not able to use the CC's information to their advantage.

¶ 12. We are not persuaded. Had the legislature meant to require the condemnor to reveal to owners what it pays for each acquired neighboring property it could have easily done so. Indeed, the drafting record

shows that the legislature amended the proposed bill to remove the requirement that the condemnor even provide examples of offers. Under the Kurylos' theory, the CC is filed to disclose all accepted offers. If the legislature had meant this information to be for the benefit of others currently involved in negotiations, it could have mandated plainly that the condemnor send the CC to neighboring landowners. Likewise, if the legislature had meant for the two documents to be filed on the same day, it would have said so.[3]

¶ 13. Furthermore, we fail to see how the Kurylos were harmed by WepCo's failure to file the CC at the same time it filed the conveyance. Had WepCo filed earlier, and had the Kurylos known during negotiations that their neighbors had been offered more than they were for an easement, what difference would it have made? The Kurylos rejected WepCo's offer as it was. Would they have been more likely to accept knowing their neighbors had been offered more? Besides,

---

[3] The ease of accomplishing this result is demonstrated by the 1989 amendment of WIS. STAT. § 32.05(2a), WIS. STAT. § 32.06(2a)'s virtual twin for eminent domain proceedings involving sewers and transportation facilities. Subsection 32.05(2a) used to require the filing of a CC in addition to the recording of the conveyance, just as § 32.06(2a) does now. *See* § 32.05(2a) (1987–88). In 1989, the legislature amended the statute so that the conveyance now contains the information formerly included in the CC. *See* 1989 Wis. Act 31, § 688m.

Regarding the purpose of the CC, while we hesitate to unnecessarily speculate on legislative motives, it seems to us that the CC is meant to notify lienholders, or "persons having an interest of record in the property." WIS. STAT. § 32.06(2a). Those are the only individuals required to be named in the CC. *See id.* And those are the individuals who might want to appeal the amount within the six weeks triggered by the recording of the CC. *See id.*

WIS. STAT. ch. 32 allows the landowner to present evidence at the just compensation hearing. *See* WIS. STAT. §§ 32.06(8), 32.08(6). If dissatisfied with the just compensation award, the owner may appeal to the circuit court and demand a jury trial. *See* § 32.06(10). At that time, the owner has all the tools of discovery available and is able to find out who got paid what. The Kurylos are able to pursue this avenue if they feel the award was unfair. Here, the Kurylos, with their jurisdictional argument, are attempting to use the procedures in § 32.06(2a), which are an attempt to make an unpleasant occurrence more palatable to landowners, to bring the entire process and the entire project to a halt. What remedy do they seek? If we were to hold, as they urge, that WepCo did not comply with § 32.06 and thus has no jurisdiction to proceed with a taking, what would happen with the case? WepCo would be sent back to square one and the process would begin anew. We fail to see how this would put the Kurylos in any better position than before, as they rejected WepCo's offers the first time around. As we said above, if the Kurylos want greater compensation for their property, they can still pursue that via the appeal process built into ch. 32. By appealing to this court, at least at this stage of the game, they are barking up the wrong tree.

█

¶ 14. Finally, we briefly address the Kurylos' argument that WepCo failed to negotiate in good faith. The Kurylos point to the discrepancy between what they were paid and what their neighbors were paid as evidence of WepCo's failure to negotiate in good faith. No two properties are the same. That WepCo offered the Kurylos' neighbors more for their easement, which cuts through their farm, unlike the Kurylos', which

runs along the property line, creates no presumption of bad faith. The Kurylos' good faith argument fails.

*By the Court.*—Judgment affirmed.