Norman C. DANIELSON, Plaintiff-Joint-Appellant,†

TOWN OF BURKE, Intervening-Plaintiff-Joint-Appellant,

v.

CITY OF SUN PRAIRIE, Defendant-Respondent.

Court of Appeals

*No. 99–2719. Submitted on briefs May 19, 2000.—Decided September 28, 2000.*

**2000 WI App 227**

(Also reported in 619 N.W.2d 108.)

†Petition to review denied.

179

On behalf of the plaintiff-joint-appellant, the cause was submitted on the briefs of *Timothy D. Fenner* and *Edith F. Merila* of *Axley Brynelson, LLP* of Madison.

On behalf of the intervening plaintiff-joint-appellant, the cause was submitted on the briefs of *Karl L. Kliminski* of *Boushea, Segall, Joanis & Johnston* of Monona.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Richard K. Nordeng* of *Stafford Rosenbaum LLP* of Madison.

Before Dykman, P.J., Eich and Roggensack, JJ.

¶ 1. ROGGENSACK, J. Norman Danielson and the Town of Burke appeal a judgment of the circuit court that concluded the City of Sun Prairie was relieved from seeking prior approval of the Town before the condemnation for or the construction of a City sewer interceptor on Danielson's property and that the City was not required to make a relocation order as the first step in its condemnation of Danielson's property.

Because we conclude that WIS. STAT. § 60.52 (1997–98)[1] does not apply to the interceptor at issue here and that WIS. STAT. § 32.05(1) does not require the City to make a relocation order as the first step in the condemnation process, we affirm the judgment of the circuit court.

## BACKGROUND

¶ 2. The City condemned for an easement to place a sewer interceptor[2] for the City's sewer system on Danielson's property in the Town of Burke. Danielson commenced this lawsuit pursuant to WIS. STAT. § 32.05(5), alleging that the City did not have the right to condemn for an easement across his property. Danielson challenges the City's condemnation on two bases: (1) the City did not obtain Town approval, pursuant to WIS. STAT. § 60.52(1), before condemning his property; and (2) the City did not adopt a relocation order as its first step in the condemnation process. The Town was permitted to intervene in Danielson's action, and it claimed that the City was required to obtain the Town's approval under § 60.52(1) before it began constructing the interceptor.

¶ 3. The City contends that no approval from the Town was required prior to either condemnation or construction because the sewer interceptor is not a construction of the type referred to in WIS. STAT. § 60.52(1). The City also contends that even though it had taken

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

[2] A sewer interceptor is a large-diameter sewer pipe which is constructed deep in the ground and receives sewage from main-line sewers, but does not receive sewage from laterals or collectors. This interceptor carries sewage collected at one point in the City across Danielson's property in the Town to the sewage treatment plant, located in another part of the City.

certain actions, such as obtaining an appraisal before adopting the relocation order, the City did adopt the order before giving Danielson notice of the jurisdictional offer and before the actual taking of the real estate occurred, which is all that WIS. STAT. § 32.05 requires.

¶ 4. The circuit court concluded that Danielson and the Town were correct about permission being required prior to both condemnation and construction. However, it determined that the City was relieved of its obligation to obtain the Town's approval because the Town did not respond to a letter that the City sent to it. The City's letter asserted that, although the City believed no town-approval was required, it was nevertheless requesting it for the project. When the Town did not respond, the circuit court construed the lack of a response as a waiver. The circuit court also concluded that WIS. STAT. § 32.05 did not require the City to make a relocation order as the first step in the condemnation process. The Town and Danielson appeal.

## DISCUSSION

**Standard of Review.**

■

¶ 5. This court applies the same summary judgment methodology as does the circuit court. *See Smith v. Dodgeville Mut. Ins. Co.*, 212 Wis. 2d 226, 232, 568 N.W.2d 31, 34 (Ct. App. 1997). We first examine the complaint to determine whether it states a claim, and then we review the answer to determine whether it joins a material issue of fact or law. *See id.* If we conclude that the complaint and answer join issue, we examine the moving party's affidavits to determine whether they establish a *prima facie* case for summary

judgment. *See id.* at 232–33, 568 N.W.2d at 34. If they do, we look to the opposing party's affidavits to determine whether any material facts are in dispute which entitle the opposing party to a trial. *See id.* at 233, 568 N.W.2d at 34.

¶ 6. Here, both parties moved for summary judgment. Neither party disputed the facts which are material to the summary judgment motions. Therefore, the questions before us are those of statutory interpretation, or the application of statutes to undisputed facts, which we decide *de novo. See Cemetery Servs., Inc. v. Department of Regulation and Licensing*, 221 Wis. 2d 817, 823, 586 N.W.2d 191, 195 (Ct. App. 1998). Additionally, whether a statute is ambiguous is a question of law which we review without deference to the circuit court. *See Awve v. Physicians Ins. Co. of Wisconsin, Inc.*, 181 Wis. 2d 815, 822, 512 N.W.2d 216, 218 (Ct. App. 1994).

## WISCONSIN STAT. § 60.52.

¶ 7. WISCONSIN STAT. § 60.52 is central to this appeal, both in regard to the contentions raised by Danielson and to those raised by the Town. It provides:

> **(1)** With the approval of the town board, any city or village adjoining a town may construct and maintain extensions of its sewer or water system in the town. An extension of a sewer or water system under this subsection is subject to s. 62.175(1) and the rights of abutting property owners.
>
> **(2)** An abutting property owner who is permitted to connect with and use a sewer or water system constructed under sub. (1) may not be deprived of the use of the sewer or water system,

except for nonpayment of water or sewer charges, without the approval of the town board.

¶ 8. The contentions of the parties require us to determine the meaning of the statutory phrase "extensions of its sewer or water system in the town." As we do so, our efforts are directed at determining and applying legislative intent. *See Truttschel v. Martin*, 208 Wis. 2d 361, 365, 560 N.W.2d 315, 317 (Ct. App. 1997). We begin with the plain meaning of the language used in the statute. *See id.* If the language is clear and unambiguous, our inquiry ends, and this court must apply that language to the facts of the case. *See id.* However, if the language used in the statute is capable of being understood by reasonably well-informed people in more than one way, we will determine legislative intent from the words of the statute in relation to its context, subject matter, scope, history, and the object which the legislature intended to accomplish. *See id.* at 365–66, 560 N.W.2d at 317.

¶ 9. The appellants and the respondent contend that the provision of WIS. STAT. § 60.52 at issue here, "extensions of its sewer or water system in the town," is capable of being understood in two different ways. Danielson and the Town contend that the dispositive phrase refers to any construction of a part of a sewer system that occurs within the physical perimeter of a town. The City contends the same phrase refers to any construction of a part of a sewer system that extends sewer service in a town. We agree that both interpretations are reasonable interpretations for well-informed people to make. Therefore, we conclude the statute is ambiguous.

¶ 10. To determine which interpretation best effects the intent of the legislature, we examine the

184

statutory context within which this directive occurs, the history of the statute and the object the legislature intended to accomplish. *See Truttschel*, 208 Wis. 2d at 365, 560 N.W.2d at 317. In regard to the statutory context, we note WIS. STAT. § 60.52 appears in the PUBLIC WORKS AND PUBLIC SAFETY section of ch. 60, which generally deals with the authority of a town to provide or pay for services to a town's residents. We also note that subsec. (2) of § 60.52 refers to a property owner "who is permitted to connect with and use a sewer or water system constructed under sub. (1) . . . ." It is undisputed that the interceptor which the City has constructed does not permit a property owner to "connect with" or "use" the sewer because of the nature of the interceptor's design. Therefore, the extension "in the town" spoken to in subsec. (1) appears not to include the interceptor because the interceptor is not a part of a sewer system to which an abutting property owner can connect.

¶ 11. WISCONSIN STAT. § 60.52 was revised by 1983 Wis. Act 532, § 7. A revised statute is to be given the same meaning as its predecessor unless the language chosen by the legislature clearly indicates a change in meaning is required. *See* WIS. STAT. § 990.001(7). Additionally, if the revision note states that the former statute's meaning is not changed, that note is indicative of legislative intent for the revised statute. *See id.* WISCONSIN STAT. § 60.29(16) (1981–82) was the predecessor to § 60.52. It provided in relevant part:

> **(16)** WATER MAINS AND SEWERS OF ADJOINING MUNICIPALITY. To grant to any adjoining city or village permission, in the extension of its water or sewage systems, subject to . . . the rights of abutting property owners, to lay and maintain water mains

and sewers in any street or highway in the town, and no abutting property owner who is permitted to connect with and use any such water main shall be deprived of the use thereof, except as to the use of water for nonpayment of water charges, without the consent of the town board.

Section 60.29(16) (1981–82) focused on the use of water from a city's system by abutting property owners within the town where a city lays its water pipes. It did not address extensions of sewer or water that would not service abutting property owners. A legislative committee note states that it was not the intent of the legislature to change the meaning of § 60.29(16), but rather to also include an abutting property owner's use of a sewer constructed within a town. That note states:

NOTE: Restates s. 60.29(16), except that the current provision which prohibits depriving an abutting property owner from use of a water system is amended to include an abutting property owner's use of a sewer system.

Therefore, we conclude that the legislative history of § 60.52 also supports a construction of the statute which does not include interceptors as "extensions of . . . sewer or water system[s] in the town."

¶ 12. Finally, it makes sense that the legislature intended to recognize a town's interest in an extension of a city's sewer or water system in the town if the extension would have an impact on town residents, such as providing and charging for water or sewer service or reviewing the quality of service provided. Giving a town a right to prior approval for that type of an extension is a logical way for the legislature to have provided for a town's interest in ensuring that the needs of its residents are met. However, a town would

have no similar interest if there were no financial or provision of services impact on town residents.

¶ 13. With the interceptor constructed on Danielson's property, the effect on the town resident is from the condemnation for the interceptor's easement, and ch. 32 provides for that interest in a uniform manner throughout the state. Therefore, we conclude that interpreting the "extensions of [a city's] sewer or water system in the town" as applying to extensions which can provide service to residents of the town effects the legislature's intent. Additionally, because towns have no home rule powers but only those powers specifically delegated to them by the legislature or necessarily implied therefrom, *see Pugnier v. Ramharter*, 275 Wis. 70, 73, 81 N.W.2d 38, 40 (1957), we conclude that the City was not required to seek Town approval prior to either the condemnation for or the construction of the interceptor at issue here.[3]

WISCONSIN STAT. § 32.05(1).

¶ 14. Most condemnations require that the condemning municipality make a relocation order pursuant to WIS. STAT. § 32.05(1). Danielson contends that the City lacked the right to condemn an easement for the interceptor because, although the City made a relocation order, it did not adopt it as the first step in the condemnation process. Here, it is undisputed that

---

[3] Because we have concluded that the City was not required to seek prior approval from the Town before either condemnation of Danielson's property or construction of the interceptor upon it, we do not reach the rationale for the circuit court's decision, *i.e.*, that the Town waived any right it had under WIS. STAT. § 60.52.

the City obtained an appraisal, informed Danielson of his right to obtain his own appraisal, and gave Danielson maps and pamphlets relating to the condemnation process before it adopted a relocation order. Danielson cites *Andersen v. Village of Little Chute*, 201 Wis. 2d 467, 549 N.W.2d 737 (Ct. App. 1996), *Toombs v. Washburn County*, 119 Wis. 2d 346, 350 N.W.2d 720 (Ct. App. 1984) and *Wisconsin Town House Builders, Inc. v. City of Madison*, 37 Wis. 2d 44, 154 N.W.2d 232 (1967) to support his contention. On the other hand, the City contends that it complied with § 32.05(1) because the statute does not require that the relocation order be the first step in the condemnation process. Because we conclude that § 32.05(1) clearly and unambiguously permits a condemning authority to take some steps before making a relocation order, we affirm the judgment of the circuit court.

¶ 15. Danielson's argument requires us to interpret WIS. STAT. § 32.05(1) to determine the intent of the legislature. *See Town of Burke v. City of Madison*, 225 Wis. 2d 615, 619, 593 N.W.2d 822, 823 (Ct. App. 1999). We begin with the plain language of the statute, and, if the statute is unambiguous on its face, generally we look no further. *See id.* Section 32.05(1) states in relevant part:

> RELOCATION ORDER. (a) Except as provided under par. (b), the . . . city council . . . shall make an order providing for the laying out, relocation and improvement of the . . . storm and sanitary sewers . . . which shall be known as the relocation order. This order shall include a map or plat showing the old and new locations and the lands and interests required. . . . .
>
> (b) No relocation order is necessary under par. (a) if the compensation, as estimated by the

appraisal under sub. (2)(a), will be less than $1,000 in the aggregate.

¶ 16. We note that nothing within subsec. (1), on its face, requires that a relocation order be the first step in a condemnation process. Furthermore, para. (1)(b) presumes that an appraisal will be made before a relocation order because a relocation order is not required if the compensation due to the landowner is "estimated by the appraisal under sub. (2)(a), [to] be less than $1,000 in the aggregate." If the condemning municipality were required to make the relocation order as the first step, it would not have the information to determine whether to comply with para. (1)(a) or (1)(b). Additionally, and in contrast to the legislative directive of subsec. (1), subsec. (2)(a) does require that certain steps to be taken before making a jurisdictional offer. It provides:

> Before making the jurisdictional offer provided in sub. (3), the condemnor shall attempt to negotiate personally with the owner. . . . Before attempting to negotiate under this paragraph, the condemnor shall provide the owner or his or her representative with copies of applicable pamphlets prepared under s. 32.26(6).

Therefore, we agree with the City that when the legislature intended to require the condemnor to use the ch. 32 process in a particular sequence, it clearly stated that intent.

¶ 17. Furthermore, we are not persuaded by the cases cited by Danielson to support his assertion that the courts have interpreted WIS. STAT. § 32.05(1) in a manner which requires a relocation order to be the first step in the condemnation process. *Andersen* concerned the question of whether the landowner's inverse con-

demnation claim should have been adjourned because the village "took its first tentative step toward initiating direct condemnation . . . when the board adopted a relocation order . . . ." *Andersen,* 201 Wis. 2d at 478, 549 N.W.2d at 741. The question of whether the village was required to make a relocation order as the first step in condemnation proceedings was never an issue in the case.

¶ 18. In *Toombs,* again, the timing of the relocation order was never a concern. The county had made the order at the commencement of the condemnation proceedings, but other factors about the order caused it to be invalid. *See Toombs,* 119 Wis. 2d at 347, 350 N.W.2d at 721. However, its invalidity was not the focus of the appeal; rather, the appeal focused on whether the landowner was entitled to litigation fees under WIS. STAT. § 32.28(3)(b) absent a valid relocation order. *See id.*

¶ 19. Also in *Wisconsin Town House Builders,* the timing of the relocation order was not necessary to the court's decision. The case turned on whether the city had to pay a landowner for lack of access to a limited-access road constructed along the plaintiff's property, when no roadway had existed prior to construction of the road for which the condemnation process was being used. *See Wisconsin Town House Builders,* 37 Wis. 2d at 50, 154 N.W.2d at 234–35. Therefore, we conclude that the City's relocation order provides no basis for Danielson's assertion that the City's condemnation process was defective.

## CONCLUSION

¶ 20. Because we conclude that WIS. STAT. § 60.52 does not apply to the interceptor at issue here and that

WIS. STAT. § 32.05(1) does not require the City to make a relocation order as the first step in the condemnation process, we affirm the judgment of the circuit court.

*By the Court.*—Judgment affirmed.

¶ 21. DYKMAN, P.J. *(dissenting)*. WISCONSIN STAT. § 60.52(1) (1997–98)[1] provides:

> With the approval of the town board, any city or village adjoining a town may construct and maintain extensions of its sewer or water system in the town.

¶ 22. The majority has concluded that what this statute really means is:

> A city or village adjoining a town may construct an interceptor sewer within the town without the permission of the town board.

¶ 23. The way that the majority reaches its conclusion is to conclude that WIS. STAT. § 60.52(1) is ambiguous; that is, that the statute can reasonably be read in more than one way. Though clarity and ambiguity are occasionally in the eyes of the beholder, a statute is ambiguous if reasonable minds can understand it in more than one way. *See Seider v. O'Connell*, 2000 WI 76, ¶ 30, 236 Wis. 2d 211, 612 N.W.2d 659.

¶ 24. I believe that if the twenty-eight relevant words of WIS. STAT. § 60.52(1) were put to 100 persons on the street, 100 legislators, or 100 persons drawn randomly from the phone book, and the question were asked: "Must a city obtain approval from a town board to install a sewer on land within a town?" that at least ninety-eight members of each group would answer

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

"yes." This, of course, assumes that these groups are composed of reasonable people. That aside, I do not believe that those twenty-eight words are susceptible to any answer but that town boards are not helpless when cities and villages adjoining them decide that they prefer to use town lands to bury their sewers. This would be a perfectly normal meaning to a perfectly normal statute found in a chapter of the statutes pertaining to towns. That is what the trial court concluded, and that is what I conclude.

¶ 25. The City of Sun Prairie's position, which the majority adopts, is that the twenty-eight words really refer only to the construction of the part of a sewer system that extends sewer *service* in a town. The reason why I part company with the City and the majority is that I cannot see how the concept of "hooking up to a sewer" is found within those twenty-eight words. The statute pertains to a "sewer or water system." The majority might have concluded that a sewer interceptor is not a "sewer or water system." This conclusion, though it runs aground on the facts, at least does not torture the English language. I do not find it possible, using the conventions of the English language, to bring within the twenty-eight operative words, the foreign concept of town residents being unable to drain their kitchen and bathroom waste water pipes into the city's interceptor. That concept is just not there.

¶ 26. The majority's answer to this is its conclusion: "We agree that both interpretations are reasonable interpretations for well-informed people to make." While I accept that this is a conclusion, I do not agree with it. Most inquiries into statutory meaning explain *why* a statute can be read one way or another. *See, e.g., Kurylo v. Wisconsin Elec. Power Co.*, 2000 WI

App 102, ¶ 7, 235 Wis. 2d 166, 612 N.W.2d 380. For example, in *Kurylo*, we explained, "[b]ecause the statute is silent regarding the time for filing the [certificates], it could reasonably be read to mean the [certificates] and conveyance must be filed simultaneously or that they may be filed at different times." *Id.* If there is no answer to the question "Why can the statute be read with two meanings?" it seems to me that the real answer is that the statute is unambiguous.

¶ 27. I need not examine the legislative history examined by the majority because having concluded that WIS. STAT. § 60.52(1) is clear, I may go no further on the question of statutory interpretation. *See Seider*, 2000 WI 76 at ¶¶ 49–50. In addition, I do not see how the town's silence was in reality its approval. I therefore respectfully dissent.