HOLMEN CONCRETE PRODUCTS COMPANY and Iverson Construction Company, Plaintiffs-Respondents,

v.

HARDY CONSTRUCTION COMPANY, INC., Westbrook Associated Engineers, Inc., Augelli Concrete & Excavating, LLC, Neenah Foundry Company, and MT. Rock, Defendants,

VILLAGE OF READSTOWN, Defendant-Appellant.†

Court of Appeals

*No. 03–3335. Submitted on briefs April 9, 2004.—Decided July 29, 2004.*

2004 WI App 165

(Also reported in 686 N.W.2d 705.)

† Petition to review denied 12-15-2004.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *David L. Jenkins* of *Jenkins and Stittleburg*, Viroqua.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Mark O. Anderson* and *Jeffrey S. Nicolet* of *Wagner Falconer & Judd, Ltd.*, Minneapolis, Minnesota.

Before Deininger, P.J., Dykman and Lundsten, JJ.

¶ 1. DYKMAN, J.   The Village of Readstown appeals from a summary judgment granted to plaintiffs, Holmen Concrete Products Company and Iverson Construction Company. The circuit court concluded that the Village was responsible for damages resulting from its failure to ensure that a prime contractor had obtained a payment and performance bond under Wis.

Stat. § 779.14.[1] The Village asserts it had no duty to assure that the contractor secured a bond because a 1997 revision of § 779.14 deleted this requirement. It also claims that this action is time barred because it was not commenced within twenty days after the Village notified Holmen and Iverson of what fraction of the outstanding amounts it planned to pay each as required by Wis. Stat. § 779.15(4)(a).[2]

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted. Wisconsin Stat. § 779.14(1m)2(d) provides:

> *Local government contracts.* The following requirements apply to contracts, other than contracts with the state, for the performance of labor or furnishing materials for a public improvement or public work.

Wisconsin Stat. § 779.14(1m)2(d)3 provides in part:

> In the case of a contract with a contract price exceeding $100,000 . . . the contract shall require the prime contractor to obtain a payment and performance bond meeting the requirements under par. (e).

Wisconsin Stat. § 779.14(1m)2(e)3 provides in part:

> A bond required under par. (d) shall be approved for a county by its corporation counsel, for a city by its mayor, for a village by its president, for a town by its chairperson, for a school district by its president and for any other public board or body by the presiding officer thereof.

[2] Wisconsin Stat. § 779.15(4)(a) provides:

> When the total of the lien claims exceeds the sum due the prime contractor and where the prime contractor has not disputed the amounts of the claims filed, the debtor state, county, town or municipality, through the officer, board, department or commission with whom the claims are filed, shall determine who is entitled to the money and shall notify all claimants and the prime contractor in writing of the determination. Unless an action is commenced by a claimant or by the prime contractor within 20 days after the mailing of the notice, the money shall be paid out in

¶ 2.   We conclude that a municipality is responsible for failure to ensure that a prime contractor obtains a payment bond because the 1997 statutory revision did not remove liability for breach of this duty as explained in *Cowin & Co., Inc. v. City of Merrill*, 202 Wis. 614, 233 N.W. 561 (1930). Further, we conclude that the twenty-day statute of limitations set forth in WIS. STAT. § 779.15(4)(a) is inapplicable to a cause of action against a municipality for failure to ensure the acquisition of a bond. Therefore, we affirm.

## BACKGROUND

¶ 3.   In 2001, the Village of Readstown contracted with Hardy Construction Company to be the prime contractor on a construction project known as the Wisconsin Avenue Corridor and Charles Street renovation project. The Village's contract with Hardy required the contractor to obtain a payment and performance bond. Hardy subcontracted with Holmen to provide materials, and with Iverson to provide materials and labor on the project. Holmen and Iverson performed their obligations under the agreement, but Hardy failed to pay them. Holmen and Iverson then submitted claims to the Village of $85,859.10 and $81,279.12, respectively, for unpaid materials and labor.

¶ 4.   In late 2001, Village staff became aware that the Village failed to ensure that Hardy had acquired an appropriate payment and performance bond. By letter dated January 24, 2002, the Village informed Holmen and Iverson and other project subcontractors that a bond may not have been issued to Hardy. The letter also outlined the partial payments the Village determined

accordance with the determination and the liability of the state, county, town or municipality to any lien claimant shall cease.

131

would be paid to each subcontractor. On February 25, 2002, the Village paid Holmen $44,295 and Iverson $41,932.

¶ 5.   On May 2, 2002, Holmen and Iverson each gave the Village written notice of their claims against it. On August 30, 2002, they sued Hardy and the Village to recover the unpaid portion of the contracts. They asserted claims of breach of contract against Hardy, claims to enforce their respective liens against public funds under Wis. Stat. § 779.15, and claims for damages stemming from the Village's failure to require Hardy to furnish a payment and performance bond as required by Wis. Stat. § 779.14(1m).

¶ 6.   The Village filed a motion for summary judgment contending that Holmen's and Iverson's claims against the Village were barred by the limitations period set forth in Wis. Stat. § 779.15(4)(a), which the Village asserted was triggered by its January 24, 2002 letter. Holmen and Iverson also filed a motion for summary judgment seeking a determination holding the Village liable to the plaintiffs for failure to require or approve a performance and payment bond of Hardy as required by statute.

¶ 7.   The trial court denied the Village's motion for summary judgment, and granted Holmen and Iverson's motion for summary judgment. The Village appeals.

## STANDARD OF REVIEW

[1]

¶ 8.   We review a grant or denial of a motion for summary judgment de novo. *State Farm Mut. Auto. Ins. Co. v. Langridge*, 2004 WI 113, ¶ 12, 275 Wis. 2d 35, 683 N.W.2d 75. Summary judgment methodology is well established and need not be repeated here. *See, e.g.,*

*Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶¶ 20–24, 241 Wis. 2d 804, 623 N.W.2d 751.

## DISCUSSION

¶ 9.   Our review of the circuit court's grant of summary judgment in this case turns entirely on our interpretation of the validity of Holmen's and Iverson's claims against the Village. Whether a complainant alleges a valid claim is a question of law for the court to decide. *Powell v. Cooper*, 2001 WI 10, ¶ 10, 241 Wis. 2d 153, 622 N.W.2d 265. The validity of Holmen's and Iverson's claims rests on our interpretation of certain provisions of the lien statutes for public contracts. Statutory interpretation is a question of law that we review de novo. *Donaldson v. Board of Commissioners of Rock-Koshkonong Lake District*, 2004 WI 67, ¶ 15, 272 Wis. 2d 146, 680 N.W.2d 762.

¶ 10.   Our interpretative task here involves two issues. The first is whether, under WIS. STAT. § 779.14, a municipality is liable to unpaid subcontractors if the municipality fails to ensure that a prime contractor secures a payment and performance bond. The second is, assuming liability exists under § 779.14, whether resulting claims are subject to the time bar set forth in WIS. STAT. § 779.15(4)(a). We address each issue in turn.

¶ 11.   The Wisconsin Supreme Court held in *Cowin* that a municipality is liable to a subcontractor if the municipality fails to require a prime contractor to furnish the municipality with a bond. 202 Wis. at 617. In *Cowin*, a firm that had contracted for road construction with the City of Merrill became insolvent and failed to pay its subcontractors. *Id.* at 614. The City had neglected to obtain from the prime contractor a bond to

ensure the payment of labor and materials to subcontractors, as required by former WIS. STAT. § 289.16 (1927). *Id.* at 614–15. Section 289.16 provided:

> (1) All contracts involving one hundred dollars or more . . . when the same pertains to or is for . . . any . . . public improvement, public road . . . of whatsoever kind of the state, or of any county, city . . . shall contain a provision for the payment by the contractor of all claims for such work and labor performed and materials furnished, and no such contract shall hereafter be made or let unless the contractor shall give a good and sufficient bond, the penalty of which shall not be less than the contract price, conditioned for the faithful performance of the contract, and the payment to each and every person or party entitled thereto of all the claims for work or labor performed, and materials furnished . . . .

Section 289.16(1) (1927). In 1979, the statute was renumbered WIS. STAT. § 779.14(1m), and, as amended, read in pertinent parts:

> (a) All contracts with the state involving $2,500 or more and all other contracts involving $500 or more for the performance of labor or furnishing materials when the same pertains to any public improvement or public work shall contain a provision for the payment by the prime contractor of all claims . . . .
>
> (b)1. A contract under par. (a) shall not be made unless the prime contractor gives a bond . . . .

Section 779.14(1m) (1995–96). A 1998 revision of § 779.14 deleted section (1m)(b)1. 1997 WIS. ACT 237.

¶ 12. The Village contends the deletion of this provision by 1997 WISCONSIN ACT 237 relieved municipalities of the duty to ensure that contractors obtain a bond, "chang[ing] the rule of *Cowin* and plac[ing] the

risk upon the prime contractor and the subcontractors." The Village asserts that the revised statute mandates only that a municipality ensure that the "contract . . . require the prime contractor to obtain a payment and performance bond." WIS. STAT. § 779.14(1m)(d)3. In the Village's view, the statutory change overruled *Cowin* and limited a municipality's duty, with regard to prime contractor bonds, to ensuring that contract language includes a bond requirement.

¶ 13.   "The purpose of statutory interpretation is to determine what [a] statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Court*, 2004 WI 58, 44, 271 Wis. 2d 633, 681 N.W.2d 110. If a statute's meaning is plain, we look no further and simply apply the statute. *Id.* at 45. In this case, the deletion of the subparagraph containing the phrase "may not be made unless the prime contractor gives a bond" from the statutory scheme requires us to look further to ascertain the statute's meaning.

¶ 14.   The 1998 changes to WIS. STAT. § 779.14 altered bond requirements for some public contracts. A Legislative Reference Bureau (LRB) analysis of the proposal outlined these changes in detail, including the creation of different payment and performance requirements for local government contracts based on the size of the contract. Legislative Reference Bureau Drafting File for 1997 A.B. 768. The analysis noted that all contracts over $100,000 must include a bond. *Id.* The comprehensive LRB summary did not address why § 779.14(1m)(b)1 was removed. *Id.* In fact, nothing in the legislative history suggests that the deletion's purpose was to remove the duty of a municipality to require a proper bond. *Id.*

¶ 15. We move next to an examination of the statutory scheme as a whole. "The context of a statute may be relevant to its meaning; therefore, statutes should be interpreted not in isolation but as a part of a whole." *Kalal*, 271 Wis. 2d 633 at 46. Here, the 1998 revision preserved a critical provision that any bond "shall be approved" by an appropriate government official identified by the statute, in this case "a village by its president." WIS. STAT. § 779.14(1m)(e)3. For this provision to have meaning, a municipality's duty in this context must extend beyond merely the drawing up of proper contract language. "[S]tatutes should be construed to give effect to each and every word, clause and sentence and a construction that would result in any portion of a statute being superfluous should be avoided wherever possible." *Wagner v. Milwaukee County Election Commission*, 2003 WI 103 33, 263 Wis. 2d 709, 666 N.W.2d 816. Plainly, a local government official cannot approve a non-existent bond. In addition, failure to impose liability where no bond is provided would render the approval requirement ineffectual. *See Boehck Construction Equipment Corp. v. Voigt*, 17 Wis. 2d 62, 76, 115 N.W.2d 627 (1962).

¶ 16. Furthermore, when interpreting a revised statute, we must construe it "in the same sense as the original unless the change in language indicates a different meaning so clearly as to preclude judicial construction." WIS. STAT. § 990.001(7); *See Danielson v. City of Sun Prairie*, 2000 WI App 227 ¶ 11, 239 Wis. 2d 178, 619 N.W.2d 108. " 'Revisions of statutes do not change their meaning unless the intent to change the meaning necessarily and irresistibly follows from the changed language.' " *Pigeon v. DILHR,* 109 Wis. 2d 519,

526 n.3, 326 N.W.2d 752 (1982) (quoting *Guse v. A.O. Smith Corp.*, 260 Wis. 403, 406, 51 N.W.2d 24 (1952)).

¶ 17. The Village argues that another provision of the statute shows that the Legislature no longer finds the ensuring of a proper bond mandatory. It notes that for contracts between $50,000 and $100,000, a substitute payment or performance assurance may be permitted "only after the contract has been awarded." WIS. STAT. § 779.14(1m)(d)2.b. By this, the Village apparently contends that if in some cases a payment and performance assurance is not permitted until after contract approval, surely the Legislature intended to relax the obligation of municipalities to ensure that contractors obtain payment or performance assurances for other contracts.

¶ 18. This argument asks us to overturn *Cowin* based on inferences drawn from a provision of the statute that is inoperative here. Long-standing precedent may not be overturned " 'unless the legislative purpose to do so is clearly expressed.' " *Hoffman v. Wisconsin Electric Power Company*, 2003 WI 64 ¶ 13, 262 Wis. 2d 264, 664 N.W.2d 55 (quoting *Fuchsgruber v. Custom Accessories, Inc.*, 2001 WI 81 ¶ 25, 244 Wis. 2d 758, 628 N.W.2d 833). When a legislative act has been construed by an appellate court, the legislature is presumed to know that without an explicit change in the law, the court's interpretation will remain unchanged. *See Blazekovic v. City of Milwaukee*, 225 Wis. 2d 837, 845, 593 N.W.2d 809 (Ct. App. 1999).

¶ 19. The policies supporting the *Cowin* rule remain pertinent today. Municipal liability for failure to ensure that a contractor furnishes a proper bond protects subcontractors, taxpayers and the municipality itself. *Cowin*, 202 Wis. at 616. "The purpose of [the

former WIS. STAT. § 289.16] is to protect subcontractors and others" should a prime contractor be unable to pay. *Id.* at 617–18. A liability rule also "insures a fairer prospect of better bids because it encourages the competition of all interested by the assurance of payment." *Id.* at 616.

¶ 20.   For these reasons, we follow *Cowin* and conclude that the Village is liable to Holmen and Iverson for damages incurred as a result of the Village's failure to require Hardy Construction to obtain a bond. We now turn to the issue of whether Holmen's and Iverson's claims are time barred.

¶ 21.   The Village contends the claims of Holmen and Iverson are subject to the twenty-day time bar set forth in WIS. STAT. § 779.15(4)(a). This section provides:

> When the total of the lien claims exceeds the sum due the prime contractor and where the prime contractor has not disputed the amounts of the claims filed, the debtor . . . municipality, through the officer, board, department or commission with whom the claims are filed, shall determine who is entitled to the money and shall notify all claimants and the prime contractor in writing of the determination. Unless an action is commenced by a claimant or by the prime contractor within 20 days after the mailing of the notice, the money shall be paid out in accordance with the determination and the liability of the . . . municipality to any lien claimant shall cease.

¶ 22.   The Village notes that Holmen and Iverson filed lien claims against the Village. The Village then mailed a letter dated January 24, 2002, to Holmen, Iverson and the other subcontractors informing them that their lien claims exceeded the sum remaining due the prime contractor. The Village asserts that this letter

provided Holmen and Iverson with appropriate notice required by WIS. STAT. § 779.15(4)(a). It further argues that the twenty-day statute of limitations for actions against the municipality under § 779.15(4)(a) began to toll with the mailing of the letter. On February 25, 2002, the Village issued checks in the proposed amounts to Holmen and Iverson. It is undisputed that Holmen and Iverson did not provide notice of their claims against the Village until May 22, 2002, nearly four months after the January 24 letter was mailed.

¶ 23.    We conclude the Village's statute of limitations defense is inapposite to the present cause of action. A claim against a municipality for failure to ensure that a contractor obtains a payment and performance bond is distinct from a construction lien claim brought under WIS. STAT. § 779.15(4)(a). In contrast, § 779.15(4)(a) applies to lien claims that can be asserted against funds held by a public owner on a public project. The lien claims statute does not apply to claims arising from the breach of a municipality's duty to require a payment and performance bond. In their complaint, Holmen and Iverson appropriately stated these two distinct claims as separate causes of action.

¶ 24.    WISCONSIN STAT. § 893.80, not WIS. STAT. § 779.15(4)(a), outlines the time and filing requirements applicable to Holmen's and Iverson's claims against the Village. The statute provides that any plaintiff bringing an action against a governmental body, official(s), agent(s) or employee(s) must provide written notice of the claim within 120 days after the happening of the event giving rise to the claim, unless the governmental party had actual notice of the claim

and was not prejudiced by any delay in notification. Section 893.80(1)(a). The governmental party then may respond with a notice of disallowance of the claim. *Id.* Failure to respond within 120 days is also considered disallowance. *Id.* The plaintiff then has six months from the notice of disallowance in which to sue the governmental party. *Id.* Holmen and Iverson have met the requirements of this statute. On January 24, 2002, the Village issued the letter informing Holmen and Iverson that Hardy did not have a bond. Ninety-eight days later, on May 2, 2002, Holmen and Iverson gave the Village their notices of claim. The Village Board voted to disallow the claims at its July 13, 2002 meeting. On August 30, 2002, Holmen and Iverson sued the Village and Hardy, well within six months of the notice of disallowance. Holmen's and Iverson's claims for breach of duty against the Village were timely filed under § 893.80.

¶ 25.  In sum, we hold that *Cowin* continues to impose a duty upon municipalities to ensure that a prime contractor obtains an appropriate payment and performance bond. We further hold that a claim for failure to approve a payment and performance bond is subject to the procedural requirements of WIS. STAT. § 893.80. Therefore, we affirm the trial court's order.

*By the Court.*—Judgment affirmed.