COURT OF APPEALS
DECISION
DATED AND FILED

February 22, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1349**

Cir. Ct. No. **2022SC4768**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

**1050 LILLIAN ST, LLC,**

  **PLAINTIFF-RESPONDENT,**

 **V.**

**GREENLOCK, LLC AND ANDREA GREENWOOD,**

  **DEFENDANTS-APPELLANTS.**

---

APPEAL from a judgment of the circuit court for Dane County: RYAN D. NILSESTUEN, Judge. *Affirmed*.

¶1     KLOPPENBURG, P.J.[1] Commercial tenant Greenlock, LLC ("Greenlock") appeals a judgment for eviction in favor of Greenlock's landlord,

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

1050 Lillian St, LLC ("Lillian").[2]  Pursuant to Lillian's motion for summary judgment, the circuit court determined that Lillian was entitled to eviction because Greenlock breached lease provisions prohibiting Greenlock from using the leased property for any purpose other than as a pet "boarding facility."  Greenlock argues that there is a genuine issue of material fact as to the intended meaning of "boarding" and, therefore, Lillian is not entitled to summary judgment in its favor. For the reasons below, I reject Greenlock's arguments and affirm.

## BACKGROUND

¶2      In January 2019, Lillian entered into a lease (the lease) with Luna Pet Resort, LLC for a commercial space (the property) in a building in Waunakee for a term of approximately six and one-half years.  Luna Pet Resort, LLC was owned by Heidi Lezotte and operated a business under the name Luna Pet Resort. According to Lezotte, she operated Luna Pet Resort as a "pet boarding facility," providing boarding "for one overnight or more."

¶3      Section 1.01(j) of the lease provides that the property "may be used by Tenant for the purpose of operating a Pet and cat boarding facility." Section 6.01 provides that the tenant shall use the property "solely for the purpose of continually conducting" the specified business, and may not use the property

---

[2] Greenlock's sole member, Andrea Greenwood, is also a party to this case and has joined this appeal.  However, the appellants appear to challenge only the circuit court's order evicting Greenlock, and Greenwood does not expressly seek any relief for herself in this appeal. Accordingly, I refer to "Greenlock" as the sole appellant for purposes of clarity.

for any other purpose "without the prior written consent of Landlord."[3] I refer to these sections collectively as the "permitted use provisions."

¶4 Lillian also leased space in that same building to two other pet-related businesses. These two businesses had similar permitted use provisions in their respective leases, one permitting use as a "pet grooming facility" and the other permitting use as a "dog day care and training facility." According to Lillian, its intent was for the three businesses in the building to offer "complementary, but not competing, pet-related" services.

¶5 Lezotte averred to the following. She understood that the permitted use provisions in the lease prohibited her from providing services other than pet boarding. While Lezotte operated the business, Luna Pet Resort occasionally performed bathing and nail-trimming services for boarded dogs, but did not provide grooming to non-boarded dogs and did not advertise grooming services. Luna Pet Resort offered dog day care services in 2020 because, due to COVID-19 pandemic travel restrictions, "customers were no longer boarding their dogs and Luna Pet Resort had virtually no customers," but did so only for a limited time and with Lillian's permission.

¶6 In January 2021, Luna Pet Resort hired Andrea Greenwood as an employee. In June 2021, Greenwood's business entity, Greenlock, purchased the

---

[3] Specifically, Section 6.01 of the lease restricts use of the property to the purpose "set forth in Section 1.01(K)" of the lease. However, the lease has no Section 1.01(K); instead, as noted above, the permitted use of the property is set forth in Section 1.01(j). Greenlock does not address this inconsistency and appears to concede that the lease restricts use of the property to the use set forth in Section 1.01(j). *See Kozlik v. Gulf Ins. Co.*, 2003 WI App 251, ¶20, 268 Wis. 2d 491, 673 N.W.2d 343 (contract language is not necessarily ambiguous due to a scrivener's error). Given Greenlock's silence as to this inconsistency, I do not address it further.

3

assets of Luna Pet Resort, LLC, and the lease was assigned to Greenlock. Greenlock took over operations of Luna Pet Resort.

¶7    Greenwood averred to the following. While she was employed at Luna Pet Resort, she provided pet grooming services for the business and was aware that the business provided pet day care services. At the time Greenlock took over the business, Greenwood was not informed by Lillian or Lezotte that the business could not continue providing these services, and she would not have purchased the business if she believed she would not be able to offer them.

¶8    It is undisputed that, after Greenlock purchased Luna Pet Resort, the business advertised and provided pet grooming and day care services for non-boarded pets. In August 2022, Lillian sent Greenlock a notice demanding that Greenlock cease advertising and providing services not permitted by the lease or it would pursue eviction. In September, Greenlock responded that it did not intend to cease providing these services.

¶9    In October 2022, Lillian brought this eviction action. Trial was delayed to permit the parties to engage in discovery. In May 2023, Lillian moved for summary judgment, arguing, among other things, that there is no genuine dispute of material fact that Greenlock breached the permitted use provisions.

¶10    At a hearing in June 2023, the circuit court granted summary judgment to Lillian. The court said that the lease is "very clear" that the property can only be used as a "pet and cat boarding facility." The court determined that "boarding" is not ambiguous and, therefore, the court did not need to consider other evidence of the intended meaning of that word. The court observed that dictionaries, including Merriam-Webster, define "boarding" in this context as providing regular meals and lodging in return for payment. *See Board*, MERRIAM-

WEBSTER DICTIONARY, https://www.merriam-webster.com (last visited Feb. 19, 2024) (defining "to board" as "to provide with regular meals and often also lodging usually for compensation").

¶11    The circuit court said that the "day care" services Greenlock had provided could arguably "fall under boarding."  However, the court said that there is a plain distinction between an "animal boarding facility and an animal grooming facility."  The court determined, based on the parties' affidavits and the rest of the summary judgment record, that there is no dispute that Greenlock breached the lease by providing services other than pet "boarding," that Greenlock did not timely cure the breach, and that Lillian is entitled to eviction.  The court issued an order and judgment for eviction.[4]  Greenlock appeals.

## DISCUSSION

¶12    Greenlock argues that the circuit court erroneously granted summary judgment to Lillian because there is a genuine dispute of material fact as to the intended meaning of "boarding" in the permitted use provisions of the lease.

¶13    Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  WIS. STAT. § 802.08(2).  This court's "standard of review on summary judgment is de novo."  ***Kurylo v.***

---

[4] In addition to granting Lillian an order for eviction, the circuit court dismissed a counterclaim by Greenlock and awarded costs and attorney fees to Lillian.  Those separate rulings have not been appealed, and I discuss them no further.

*Wisconsin Elec. Power Co.*, 2000 WI App 102, ¶4, 235 Wis. 2d 166, 612 N.W.2d 380.

¶14    Here, summary judgment turns on the interpretation of the lease. "[T]he cornerstone of contract construction is to ascertain the true intentions of the parties as expressed by the contractual language." *State ex rel. J./Sentinel, Inc. v. Pleva*, 155 Wis. 2d 704, 711, 456 N.W.2d 359 (1990). Courts "discern the intent of contracting parties from the plain and ordinary meaning of the text." *Milwaukee Police Supervisors Org. v. City of Milwaukee*, 2023 WI 20, ¶16, 406 Wis. 2d 279, 986 N.W.2d 801. If the language used by the parties is unambiguous, a court's "attempt to determine the parties' intent ends with the four corners of the contract, without consideration of extrinsic evidence." *Huml v. Vlazny*, 2006 WI 87, ¶52, 293 Wis. 2d 169, 716 N.W.2d 807. "If the contract language is fairly susceptible to more than one reasonable construction, the contract is ambiguous and extrinsic evidence may be used to determine the parties' intent." *State ex rel. Massman v. City of Prescott*, 2020 WI App 3, ¶14, 390 Wis. 2d 378, 938 N.W.2d 602.

¶15    "Whether ambiguity exists in a contract" is a question of law reviewed de novo. *Mattheis v. Heritage Mut. Ins. Co.*, 169 Wis. 2d 716, 720, 487 N.W.2d 52 (Ct. App. 1992). Likewise, "interpretation of an unambiguous contract presents a question of law" reviewed de novo. *Town Bank v. City Real Est. Dev., LLC*, 2010 WI 134, ¶32, 330 Wis. 2d 340, 793 N.W.2d 476.

¶16    Interpretation of the lease here turns on the meaning of the word "boarding." I agree with the circuit court that the dictionary definition on which

the court relied—providing regular meals and lodging in return for payment—is a representative definition of the word "boarding,"[5] that the word "boarding" as defined is unambiguous, and that the definition does not encompass the grooming services that Greenlock undisputedly provided to nonboarding animals.

¶17    Greenlock does not offer any other possible definition of "boarding" or argue that that word is ambiguous based on the lease language itself.[6]  Instead, Greenlock's primary argument is that "boarding" is ambiguous because, while Lezotte operated Luna Pet Resort, Lezotte allegedly provided day care and grooming services.  Greenlock's implication appears to be that the intended meaning of "boarding" may encompass these services because Lillian permitted Lezotte to provide them.

¶18    This argument fails because it relies on extrinsic evidence, of conduct of the landlord and the original tenant after their execution of the lease, rather than the language of the lease itself.  As explained above, a court considers extrinsic evidence only if it determines, based on review of the "four corners" of the contract, that the contract language is ambiguous.  *See* **Huml**, 293 Wis. 2d 169, ¶52.  Greenlock seeks to turn this rule on its head and use evidence of events that

---

[5] *See* **Just v. Land Reclamation, Ltd.**, 155 Wis. 2d 737, 745, 456 N.W.2d 570 (1990) ("When determining the ordinarily understood meaning of a word or phrase, it is appropriate to look to definitions in a recognized dictionary.").

[6] Greenlock asserts that "nothing was defined in the lease," which may be intended as an argument that "boarding" is ambiguous because the lease provides no definition for that term. However, Greenlock does not develop this argument or support it with citation to legal authority. *See* **State v. Pettit**, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (this court need not address undeveloped arguments or arguments unsupported by citation to legal authority). Greenlock also argues that the circuit court erred in various respects in its summary judgment analysis, but I need not reach those arguments because this court addresses summary judgment de novo.

occurred after execution of the lease to cast doubt on the plain meaning of "boarding." Greenlock may rely on extrinsic evidence only if the language of the lease is ambiguous on its face, and, as explained above, Greenlock develops no argument to that effect.

¶19    In a similar vein, Greenlock argues that Lezotte's alleged use of the property for pet grooming and day care led Greenlock to believe that the lease permitted the tenant to provide those services. Therefore, according to Greenlock, Greenlock "had a different understanding and intent when entering into the commercial lease with … Lillian than the other tenants claimed they had," and there is a material dispute about the intended meaning of the permitted use provisions. Again, Greenlock improperly relies on extrinsic evidence, rather than the language of the lease itself, to establish ambiguity. *See Kernz v. J.L. French Corp.*, 2003 WI App 140, ¶9, 266 Wis. 2d 124, 667 N.W.2d 751 ("[R]egardless of the parties' intentions … unambiguous contract language controls contract interpretation.").

¶20    Greenlock appears to argue that there is a factual dispute about whether Lillian waived its right to enforce the permitted use provisions by allowing Lezotte to breach those provisions. However, as Lillian notes in its respondent's brief, WIS. STAT. § 799.40(1s) provides that "[i]t shall not be a defense to an action of eviction or a claim for damages that the landlord or tenant has previously waived any violation or breach of any of the terms of the rental agreement," and the lease mirrors this statute, providing that "waiver by a party of any breach of any [lease] term … shall not be deemed to be a waiver" of the right to enforce any "subsequent breach" of that term." Thus, according to Lillian, evidence of "past alleged breaches" by Greenlock's predecessor is immaterial. Greenlock does not respond to this argument by Lillian, and I deem it conceded.

*See Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (a party's failure to refute an argument may be taken as a concession).

¶21     Greenlock contends that the circuit court erroneously failed to "construe the facts in [the] light most favorable to" Greenlock. To be sure, on summary judgment, the court "views the facts in the light most favorable to the non-moving party." *Behrendt v. Gulf Underwriters Ins. Co.*, 2009 WI 71, ¶11, 318 Wis. 2d 622, 768 N.W.2d 568. However, Greenlock does not make clear what facts the court erroneously failed to construe in its favor. The only issue that Greenlock identifies as a material fact in dispute is "the permitted use of the commercial space" under the lease but, as explained above, this issue is resolved as a matter of law by the unambiguous language of the lease, without the need to consider facts extrinsic to the lease.

¶22     Greenlock also contends that, because Lillian drafted the lease, the meaning of "boarding" must be construed against the drafter. However, contract language is construed against the drafter only if that language is ambiguous. *Seitzinger v. Community Health Network*, 2004 WI 28, ¶22, 270 Wis. 2d 1, 676 N.W.2d 426. As explained above, Greenlock has not shown that the contract language is ambiguous.

¶23     Finally, Greenlock appears to argue that the circuit court should not have credited the affidavits of Lillian's witnesses. Greenlock contends that these affidavits are "highly suspect" because they contain "the same language and assertions," and because the affiants had not been deposed. I interpret Greenlock to be arguing that the affidavits may not be relied on in determining whether Lillian is entitled to summary judgment. However, Greenlock cites no specific

language in these affidavits suggesting that they are suspiciously uniform, nor does Greenlock cite any legal authority for the proposition that an affidavit should not be relied on unless the affiant has been deposed. *See **State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (this court need not address issues not supported by citation to the record or to legal authority). Moreover, as explained above, the court did not, and I do not, rely on the affidavits to determine that the meaning of "boarding" as defined in the dictionary is unambiguous; and Greenwood's affidavit alone suffices to establish as undisputed that Greenwood provided grooming services that do not fall within that unambiguous meaning.

¶24 In sum, Greenlock fails to show that Lillian is not entitled to summary judgment granting an order for eviction.[7]

## CONCLUSION

¶25 For all these reasons, I affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[7] To the extent that Greenlock intends to make any other arguments, I am unable to discern them from Greenlock's briefing and reject them as undeveloped. *See **Pettit***, 171 Wis. 2d at 646.

Both parties ask this court to grant attorney fees incurred in this appeal. However, neither party filed a separate motion in this court for attorney fees, as is required under WIS. STAT. RULE 809.25(3).