RAMSDALE vs. FOOTE and others.

*September 22 — October 10, 1882.*

55    557
59 LRA 818n
59 LRA 888n

FLOWAGE OF LAND: PLEADING. *(1) Complaint construed. Watercourse. Presumptive right to drainage.*
CRANBERRY LAWS: ARBITRATION. *(2) Refusal to join in selecting arbitrators: waiver.*
LIMITATION OF ACTIONS. *(3) Continuing nuisance.*

1. A complaint alleging in substance that the defendants wrongfully built a dam, upon or near the north line of their lands, across a ditch which drained the plaintiff's land and which had been cut along the line of his land and thence northward beyond the north line of the defendants' lands; and that they had maintained such dam since May, 1870, and had thereby flooded and overflowed and continued to flood and overflow the plaintiff's land to his damage, etc., is *held*, on demurrer, to state a cause of action. There is nothing in the complaint from which it can be inferred that the water which overflowed the plaintiff's land was mere surface water, and it does not appear that the dam or any part of the ditch was on the defendants' land. The water having continuously flowed along the ditch since May, 1870, the plaintiff is presumptively entitled to have it continue such flowage as against the defendants.

2. Assuming that the so-called "cranberry laws" (R. S., secs. 1472–1479) are constitutional (a question not here determined), yet a person flooding lands cannot refuse to join in the selection of arbitrators as required by those laws, and then when sued, defend on the ground that the plaintiff's only remedy is by arbitration.

3. Every continuance of a nuisance is, in law, a new nuisance. An action, therefore, to recover damages for a continuing nuisance is not barred, under sec. 4222, R. S., by the fact that the same had existed for more than six years prior to the commencement of the action.

APPEAL from the Circuit Court for *Winnebago* County.

This is an appeal from an order sustaining a demurrer to the complaint, which alleged, in effect, that at the times mentioned the plaintiff owned, occupied, and possessed eighty acres of land, being a half mile in extent north and south, and that the defendants owned, occupied and possessed one

hundred and twenty acres of land, being three-quarters of a mile in length north and south, and that the north forty of the plaintiff's land was directly east, and adjoined the south forty of the defendant's land; that in May, 1870, the defendants, intending to injure the plaintiff, wrongfully erected and built a dam across a certain ditch or drain which had been cut along the west line of the plaintiff's land, and running thence north beyond the north line of the defendants' land, and which ditch drained certain low land of the plaintiff's farm, and the dam was built upon or near the defendants' north line, being about half a mile north of the plaintiff's north line, for the purpose of enabling the defendants to flow or flood with water their said one hundred and twenty acres of land, and that said dam had been maintained and continued by the defendants ever since May, 1870, for the purpose of flowing their said lands when necessary in the cultivation of cranberries, and that during that time the defendants' said lands had been used for the purpose of cultivating cranberries thereon, and that by reason of said dam about thirty acres of the plaintiff's farm had during the time been flooded and overflowed, and greatly damaged and injured, and the use thereof lost to the plaintiff, and that the said dam was so erected and maintained without the permission or assent of the plaintiff, and without compensation or any offer of compensation, and that by reason of said flooding of his land, the plaintiff had sustained damage to the amount of $1,000; that being unable to agree with the defendants as to the amount of said damage, the plaintiff, October 18, 1881, served notice upon defendants of the selection of an arbitrator by him, as provided by sec. 1473, R. S., but the defendants failed, neglected and refused to select an arbitrator upon their part, as required by said section; and thereupon prayed judgment for the amount of damages named and costs.

The grounds of demurrer assigned were, in effect: (1) The complaint did not state facts sufficient to constitute a cause

of action; (2) the court had no jurisdiction of the subject matter of the action; (3) the plaintiff had no legal capacity to sue, because he had taken steps to procure arbitrators; (4) the action was barred by sec. 4222, R. S. From the order sustaining the demurrer the plaintiff appealed.

*W. W. D. Turner*, for the appellant, besides arguing the questions discussed in the opinion, contended that the "cranberry laws" were unconstitutional: 1. They authorize the taking of private property for the private use of another. The power of eminent domain extends only to the appropriation of property for what can be deemed a public use; and a law which attempts to authorize a taking of property for a private use can afford no defense for acts done in carrying out its provisions. Cooley's Con. Lim., 529; *Pratt v. Brown*, 3 Wis., 603; *Bankhead v. Brown*, 25 Iowa, 540; *Dickey v. Tennison*, 27 Mo., 373; *Wild v. Deig*, 43 Ind., 455; Sedgwick on Const. Law, 514–516; Potter's Dwarris, 375. And this is so even though the law provides for adequate compensation. *Thien v. Voegtlander*, 3 Wis., 461; *Powers v. Bears*, 12 id., 213. The laws in question are special legislation, purely and solely in the private interest of the owners of cranberry lands, in which the public has no interest or benefit. The law makers may determine *when* a public use requires the taking of private property; but it is for the courts to say *what is* a public use. 2 Kent's Comm., 340; Potter's Dwarris, 386; *Tyler v. Beacher*, 44 Vt., 648; *S. C.*, 8 Am. Rep., 398. As to what is a public use, see *Whiting v. S. & F. du L. R. R. Co.*, 25 Wis., 167; *Taylor v. Porter*, 4 Hill, 140; *Osborn v. Hart*, 24 Wis., 89. The right of eminent domain may be exercised in behalf of mills that grind for toll and are compellable by law to render impartial service for all, but not in favor of mills not so compellable. *Sadler v. Langham*, 34 Ala., 311. And see *Harding v. Goodlett*, 3 Yerg., 41; *People v. Township Board*, 9 Am. L. Reg. (N. S.), 487. 2. These laws do not provide for a just compensation.

*Sherman v. L. S. & W. R. R. Co.,* 40 Wis., 649; 2 Kent's Comm., 339. 3. They are inimical to sec. 9, art. I of the constitution, which gives to every one a "certain remedy in the laws, for all injuries, or wrongs which he may receive in his person or property;" also to sec. 5, art. I, which provides for trial by jury. See Revisers' Notes § 1478.

For the respondent the cause was submitted upon the brief of *Finch & Barber.*

CASSODAY, J. The rule of the civil law, as stated by Pothier, was that "each of the neighbors may do upon his heritage what seemeth good to him, in such manner, nevertheless, that he doth not injure the neighboring heritage." This rule has been adopted and followed, in several of the states where the common law is in force, as being "based upon sound reasons of equity and justice." *Shane v. Railway Co.,* 71 Mo., 237; *McCormick v. Railway Co.,* 70 Mo., 359; *Kouffman v. Griesemer,* 26 Pa. St., 407; *Miller v. Laubach,* 47 Pa. St., 154; *Gillham v. Railway Co.,* 49 Ill., 484; *Gormley v. Sanford,* 52 Ill., 158; *T., W. & W. R. Co. v. Morrison,* 71 Ill., 616; *J., N. W. & S. E. R. Co. v. Cox,* 91 Ill., 500; *Butler v. Peck,* 16 Ohio St., 334; *Overton v. Sawyer,* 1 Jones, Law, 308; *Livingston v. McDonald,* 21 Iowa, 160; *Adams v. Walker,* 34 Conn., 466; *Ogburn v. Connor,* 46 Cal., 346.

Chief Justice BREESE says this doctrine "has found favor in almost all the common law courts of this country and of England." 49 Ill., 486. In *Hoyt v. Hudson,* 27 Wis., 658–9, however, Chief Justice DIXON took occasion to reject the rule of the civil law and adopt that of the common law, which he defined as follows: "The doctrine of the common law is that there exists no such natural easement or servitude in favor of the owner of the superior or higher ground, or fields, as to mere surface water, or such as falls or accumulates by rain or the melting of snow, and that the proprietor of

the inferior or lower tenement or estate may, if he choose, lawfully obstruct or hinder the natural flow of such water thereon, and in so doing may turn the same back upon or off on to or over the lands of other proprietors without liability for injury ensuing from such obstruction or diversion."

The rule in *Hoyt v. Hudson* has frequently been followed in this and other courts. *Eulrich v. Richter*, 37 Wis., 226; *Allen v. Chippewa Falls*, 52 Wis., 434; *O'Connor v. Railway Co.*, id., 530; *Taylor v. Fickas*, 64 Ind., 167; *O'Brien v. St. Paul*, 25 Minn., 334. This last case, as well as the late case of *McClure v. Red Wing*, 28 Minn., 186, also follows *Pettigrew v. Evansville*, 25 Wis., 223, and seems to be an exception to the general common law rule, and holds that surface water may be turned upon the land of another in such a way as to have the characteristics of a natural watercourse, and then must, to some extent, be governed by the rules applicable to natural watercourses. But notwithstanding the question was discussed upon the argument, yet the construction which we have put upon the complaint precludes us from determining the case upon the principles applicable to mere surface water. The complaint is silent upon the subject of surface water. There is nothing in it from which it can be inferred that the water which "overflowed and flooded" the plaintiff's land, "and continued to flood or overflow" the same, was surface water, unless it be the words "ditch or drain which had been cut," etc. But if the water was continually flowing, then, although the ditch or drain may have been artificial, yet the water flowing therein would seem to have a continuous or living source. Besides, there is no allegation in the complaint that the dam, or even any of the ditch, was on the defendants' land. The water having continuously flowed along that ditch northward to the place where the dam is located since May, 1870, the plaintiff is presumptively entitled to have it continue such flowage as against the defendants. If the defendants have any good

reason why it should now be stopped, they can make it available by way of answer. Certainly it requires no authorities to show that the defendants had no right to build a dam and turn a flowing stream back upon and flood the lands of the plaintiff. But see *Arimond v. G. B. & M. Canal Co.*, 31 Wis., 316; *Borchardt v. Wausau Boom Co.*, 54 Wis., 107; *Weaver v. M. & R. R. Boom Co.*, 28 Minn., 534. We must hold, therefore, that the complaint does state facts sufficient to constitute a cause of action.

As to the second and third grounds of demurrer, it is sufficient here to say that, assuming that the "cranberry laws," so called (secs. 1472–1479 R. S.), are constitutional (a question not here determined), yet it is evident that the defendants cannot refuse to join in the selection of arbitrators as required by those laws, and then, when sued, defend on the ground that the plaintiff had mistaken his remedy and was confined exclusively to arbitration. *Arnet v. Ins. Co.*, 22 Wis., 516; *Sherman v. M., L. S. & W. R. R. Co.*, 40 Wis., 652.

The fourth ground of demurrer is the statute of limitations. It is well settled that every continuance of a nuisance is, in law, a new nuisance. Angell on Lim., § 300; *Baldwin v. Calkins*, 10 Wend., 178; *Staple v. Spring*, 10 Mass., 74; *Hodges v. Hodges*, 5 Met., 205; *Waggoner v. Jermaine*, 3 Denio, 306; *Spilman v. Roanoke Nav. Co.*, 74 N. C., 675; *Cobb v. Smith*, 38 Wis., 36. This being so, it is evident that the statute of limitations is not available to the defendants. In fact, counsel made no argument and cited no authority in support of it, and hence it need not be further considered.

*By the Court.*— The order of the circuit court is reversed, and the cause is remanded for further proceedings according to law.